It is admitted that while the plaintiff was a minor, living as a guest with the defendant Skinner, a near relative, he was told by Skinner that the decree of the Supreme Court, under the peculiar circumstances, operatedunjustly upon his uncle, the other defendant; and that the views of the case that had been given to him by his guardian, with whom he had consulted, were erroneous, and that the plaintiff was thereby induced, in ten days after arriving at full age, to execute the note in controversy. I put my opinion on the ground of "equity confessed by the answer."
Conceding to the defendant perfect sincerity and honesty of purpose, which I cheerfully do, it was surely incumbent on him, after taking the responsibility of opposing his view of the case to that of the Supreme Court, and of the plaintiff's guardian, in regard to the justice of the decree in its operation on the other defendant, to set forth the grounds upon which his opinion was based, and by which it could be supported; this he failed to do. On the contrary, according to the facts admitted, the decree gives to the plaintiff no more than he was, in conscience, at liberty to take, and does not take from the defendant Little one cent that he could in conscience keep. The testator gives certain of his slaves and other personal property, together with his land, to his widow for life, andthen to his children. Certain others of his slaves he gives to his widowabsolutely, and charges his whole estate with the payment of debts, with power to sell both the real and personal estate for that purpose. After his death, the widow and the other executors agree that, owing to the peculiar circumstances, it was most advisable to pay off the debts by a sale of the slaves, in which she had but a life estate, and of the land in which, also, she had but a life estate. The slaves in which, under the will, she took the absolute estate, were in this way exonerated. She had no right in conscience to take any benefit from this peculiar state of things, other than that which was *Page 167 
common to herself and the others interested in the property; and by a well-settled principle of equity, the justice of which no one can call in question, and which was acted upon as the basis of the decree referred to, inasmuch as the slaves in which she had the absolute estate, although primarily liable, were exonerated by a sale of the land in their stead, they were charged with the amount raised by the sale of the land. The result thus produced, so far from being unjust, was in strict accordance with the most refined notions of justice, and as such would strike any one who had not some preconceived prejudices to the contrary. It is true that this view of the case may not have presented itself to Mrs. Little, and she distributed her bounties and hospitalities among her children according to her own good pleasure, considering herself the absolute owner of those slaves; and the principle of substitution, announced by the decree which required the land-money to be replaced by a sale of slaves, made her estate that much less than she and those members of the family who had imbibed impressions from her, supposed it to be. Still this does not even give color to the allegation that the decree worked injustice to the defendant Little. It is admitted that the slaves on hand, which had belonged to the testator, were more than sufficient to replace the "land-money." So, the individual estate of no one of the executors was charged with one cent by reason of the decree, and how the decree operated unjustly in respect to the defendant Little, is not shown or suggested. I concur the opinion that the injunction ought to be continued until the hearing.
PER CURIAM, Decree to be certified.